# DUCIE v. FORD.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF MONTANA.

No. 777. Submitted January 8, 1891. — Decided March 2, 1891.

A trust may result to him who pays the consideration for real estate where the title is taken out in the name of another, which is not within the statute of frauds, and it may be shown, by parol testimony, whose money was actually paid for it; but such trust must have arisen at the time the purchase was made, and the whole consideration must have been paid or secured at the time of, or prior to, the purchase, and a bill in equity to enforce it must show without ambiguity or equivocation that the whole of the consideration appropriate to that share of the land which the plaintiff claims by virtue of such payment, was paid before the deed was taken.

Two parties had located and claimed a lode. Plaintiffs were preparing to contest defendant's application for a patent when it was agreed orally that they should relinquish to him such possession as they had, in con- sideration of his agreeing to purchase the land upon their joint account.

He took out a patent and worked the lode. In an action to have him decreed to hold one-half as trustee for the plaintiffs, *Held*, that such taking possession was not part performance of the contract so as to take it out of the statute of frauds.

THIS was an appeal from a decree of the Supreme Court of the Territory of Montana sustaining a demurrer to a complaint originally filed in the Second Judicial District of such Territory. The complaint set forth in substance that the plaintiffs on September 18, 1888, "became possessed of and owned" certain premises upon which they had discovered a vein or lode of valuable quartz; that they "duly located" such lode "as a mining claim" under the laws of the United States, "and posted a notice of such location," and established by posts and corners, boundaries thereto, designating it as the "Figi" lode; and further claimed to have possessed and owned said premises up to the 15th of March, 1881, when the defendant was about to procure a patent to himself for the same premises "under a pretended location and claim designated by him as the 'Odin' lode." The plaintiffs apprised the defendant of their claim and notified him that they "would adverse and contest" his application for a patent. Thereupon they "entered into a mutual and verbal agreement" by which it was understood that in consideration of the plaintiffs' "promising and agreeing to relinquish and give up the possession of such premises" to the defendant, and to abstain from filing any adverse claim or protest against defendant's application for a patent, and to permit him to proceed and procure a patent, the defendant agreed that he would be tenant in common of the plaintiffs in an undivided half of the premises; that plaintiffs and defendant should purchase the premises jointly, but in defendant's name, defendant acting as "purchasing agent and as trustee of the plaintiffs," and that after the issuance of a patent, defendant would execute and deliver to plaintiffs a deed of an undivided half of the premises; that relying on defendant's honesty, the plaintiffs relinquished and delivered up possession to the defendant, withdrew all objections to defendant's claim, and permitted him to procure a patent, and "from time to time thereafter" paid him their

share of the purchase-money of the premises; and that a patent was subsequently issued to defendant in pursuance of such agreement, but he refused, and still refuses to convey their share to the plaintiffs.

The prayer was as follows: First, that defendant be declared to hold the legal title to an undivided half of said premises as trustee for the plaintiffs. Second, that he be directed to execute a deed of such undivided half to plaintiffs. Third, that he be required to account to them for the rents, issues and profits accrued from such undivided half. Defendant demurred upon the ground: First, that the complaint set forth a contract within the statute of frauds; that no part performance was averred, and that mere delivery of possession to another does not pass title and cannot be given in evidence as affecting the transfer of real estate. Second, that the complaint is ambiguous, uncertain and unintelligible in that it does not show how much or at what times plaintiffs were to pay to defendant any money, nor what amount of money they are willing to pay, and they make no tender. The demurrer was sustained, an appeal was taken to the Supreme Court of the Territory; and the judgment of the court below affirmed. Plaintiffs thereupon appealed from such affirmance to this court.

*Mr. Walter H. Smith* for appellants.

I. The case made in the complaint is one of a resulting trust, and, therefore, within the exception of the Statute of Frauds.

It is a resulting trust, because the purchase-money was paid to the defendant for one undivided half of the premises *before* the purchase from the government. I know that the court below assumed that it was paid *after* the purchase, but I take issue with it upon the fact. That depends upon the language and construction of the complaint. As I read it the court below was in error, and clearly in error. The complaint alleges that the plaintiffs were in possession on the 18th of September, 1878, and continued in possession until the 15th of

March, 1881; that in the month of February, 1881, the agreement was made by which the defendant was to be let into possession, and purchase the premises jointly, and that they "thereafter paid to defendant their share of the purchase-money of said premises, and that thereafter, to wit, on or about the 15th of May, 1881, the defendant, in pursuance of said agreement and of said trust, purchased from the United States of America, for the use and benefit of the plaintiffs, an undivided one-half of said premises, as well as another undivided one-half for his own use and benefit, and took from the register and receiver of said land office a certain final receipt for the purchase price of said premises."

Here is a specific allegation that plaintiff's share of the purchase-money was paid to the defendant before he purchased of the United States.

Such payment, by operation of law, created a resulting trust in the defendant for the benefit of the plaintiffs, and by all the authorities, and they are exceedingly numerous, took the case out of the statute. Browne on the Statute of Frauds, § 83. Story Eq. Jur. § 1201.

II. Taking possession under the contract is such part performance as takes the case out of the statute.

That such possession was taken is admitted by the demurrer. The complaint alleges that the plaintiffs were in possession when the contract was made, and that they agreed "to relinquish and give up the possession of said premises to said defendant," and "that, relying upon the good faith and honesty of the defendant, plaintiffs thereupon relinquished and delivered their possession of said premises to the defendant, and that the defendant then and there was admitted and went into possession of the same in compliance with and under said agreement and said trust."

If the defendant "went into possession" under said agreement he could not have been in possession before. To pretend that he was, is giving to the language used an entirely different signification from what would be generally understood, and is doing violence to the plain meaning of the words.

*Mr. M. F. Morris* for appellee.

Mr. Justice Brown delivered the opinion of the court.·

By Rev. Stat. sec. 2319, all valuable mineral deposits in lands belonging to the United States are declared to be free and open to exploration and purchase "by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law." By sec. 2324, the miners of each mining district may make regulations not in conflict with the laws of the United States, or of the State or Territory, governing the location, manner of recording and amount of work necessary to hold possession of a mining claim, subject to the requirement, among others, that "upon each claim located after May 10, 1872, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year." By sec. 2325, a patent for any land so claimed and located may be obtained by filing in the proper land office an application, showing compliance with the terms of the act, together with the plat and field-notes, showing the boundaries of the claim, which shall be distinctly marked by monuments, and by posting a copy of such plat, with the notice of such application for a patent, in a conspicuous place on the land, etc. Sec. 2326 provides also for proceedings upon filing adverse claims, declaring that it shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment.

The sole question in this case is whether the con`ract between these parties is not within the Statute of Frauds. Sec. 217 of the compiled Statutes of Montana declares that " no estate or interest in lands . . . shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing,"· etc. To take the case out of the operation of the statute,·

plaintiffs claim, first, that the transaction constitutes a trust by operation of law, and is, therefore, within the express exception of sec. 217: second, that there was such part performance, by taking possession under the contract, as takes it out of the statute.

1. While there is no doubt of the general proposition that a trust results to him who pays the consideration for an estate, where the title is taken in the name of another; that such trust is not within the statute, and that parol evidence is admissible to show whose money is actually paid for the property; it is equally clear that the trust must have arisen at the time the purchase was made, and that the whole consideration must have been paid or secured at the time of or prior to such purchase; *Olcott* v. *Bynum*, 17 Wall. 44; *White* v. *Carpenter*, 2 Paige, 217, 241; *Buck* v. *Swazey*, 35 Maine, 41; 1 Perry on Trusts, sec. 133; 2 Pom. Eq. Jur. sec. 1037. But, as before stated, parol evidence is competent to prove that the consideration actually moved from the *cestui que trust*. *Boyd* v. *McLean*, 1 Johns. Ch. 582; *Baker* v. *Vining*, 30 Maine, 121; *Whitmore* v. *Learned*, 70 Maine, 276; *Page* v. *Page*, 8 N. H. 187, 195; 2 Pomeroy Eq. Jur. sec. 1040. It follows that the bill or complaint should show, without ambiguity or equivocation, that the whole of the consideration appropriate to that share of the land which the plaintiffs claim by virtue of such payment, was paid before the deed was taken. Tested by these rules, we think the plaintiffs have failed to make out their case with that clearness which the law demands. They aver that after they had delivered up possession of the premises to the defendant, " they withdrew all objections, protest and adverse claims to or against the defendant's claim, and abstained from filing any adverse claim or protest in the United States Land Office against defendant's application, and thereby permitted and enabled the defendant to procure a patent for said premises, and *from time to time thereafter* paid to defendant their share of the purchase-money of said premises, and that *thereafter*, to wit, on or about the 15th day of May, 1881, the defendant, in pursuance of said agreement and of said trust, purchased from the

United States of America for the use and benefit of the plaintiffs, an undivided half of said premises," etc. And they further aver in a subsequent allegation that " if there be, or if defendant claims that there is, anything or any amount due by plaintiffs in connection with the procuring of said patent, or with said agreement, the plaintiffs are ready and willing and fully able to pay the same and offer to do so; that the defendant has refused to inform plaintiffs whether there was, or whether he claimed that there was, any money or thing due from the plaintiffs, although requested to do so, and that plaintiffs had many times offered to pay defendant whatever he might claim that there was due in said connection, and that defendant has refused, and that on account of said refusals of defendant plaintiffs are not informed in relation to said matter." Not only is there a failure to aver when and how much money was paid before the purchase was made, but the first allegation above quoted leaves a doubt whether the payment was made before or after the patent was taken. In one place they say that they thereby permitted and enabled the defendant to procure a patent for said premises, and *from time to time thereafter* paid the defendant, and immediately follow it by an averment that *thereafter*, to wit, on or about the fifteenth day of May, the defendant made the purchase. The subsequent allegation throws additional doubt upon the question, and, in fact, is susceptible of the implication that plaintiffs were by no means confident that they had paid any considerable amount, but were willing to pay their share upon being informed of the amount still due.

We think the contention of the plaintiffs that a trust is made out by operation of law is not sustained. The allegations amount to nothing more than that they made certain advances of money to defendant for the purchase of this interest; but when or in what form or at what time such advances were made is left entirely unanswered. As plaintiffs have chosen to stand upon their complaint without apparently asking leave to amend, which we cannot doubt would have been readily granted, we are constrained to hold the allegations insufficient to create a trust.

2. Was there a part performance of the parol contract with the defendant sufficient to take the case out of the statute? The only act alleged in that connection is the surrender of possession to the defendant; or in the language of the complaint, that "relying upon the good faith and honesty of the defendant, plaintiffs. thereupon relinquished and delivered their possession of said premises to the defendant, and that the defendant then and there was admitted and went into possession of the same in compliance with and under said agreement and said trust." This, however, must be taken in connection with the prior allegation that the " defendant was about to proceed to procure a patent" to himself for the same premises, "under a pretended location and claim designated by him as the Odin lode;" whereupon plaintiffs apprised him that they "claimed, owned, and possessed said premises," and would adverse and contest his application. Now conceding that the surrender of possession to the defendant is a sufficient performance to take a case out of. the statute, such surrender must be made in pursuance of the contract, and be referable to it. In short, it must be a new possession *under the contract*, and not merely the continuance of a former possession claimed under a different right or title. Pomeroy on Contracts, sec. 116, 123; *Morphett* v. *Jones*, 1 Swans. 172; *Wills* v. *Stradling*, 3 Vesey, Jr. 378; *Anderson* v. *Chick*, 1 Bailey's Eq. 118; *Smith* v. *Smith*, 1 Rich. Eq. 130 ; *Jacobs* v. *Peterborough & Shirley Railroad Co.*, 8 Cush. 223 ; *Jones* v. *Peterman*, 3 S. & R. 543; *Christy* v. *Barnhart*, 14 Penn. St. 260; *Johnston* v. *Glancy*, 4 Blackford, 94. As stated by Mr. Justice Grier in *Purcell* v. *Minor*, 4 Wall. 513, 518, delivery of possession " will not be satisfied by proof of a scrambling and litigious possession."

Taking the averments of the complaint together, it appears that both these parties had located and claimed this lode, and that plaintiffs were preparing to adverse and contest defendant's application for a patent when a bargain was made between them, by which it was agreed that plaintiffs should relinquish such possession as they had to defendant in consideration of the latter agreeing to purchase the land upon

their joint account. In *Clinan* v. *Cooke*, 1 Sch. & Lef. 22, 41, Lord Redesdale indicated, as a test, whether the party let into possession could have been treated as a trespasser in the absence of the parol agreement, and this has been accepted by many writers upon equity jurisprudence as a most satisfactory criterion. Now, it does not appear in this case that the antecedent relations of the defendant to this land were changed by reason of this contract, and it does appear that the only change that took place, in fact, arose from the plaintiffs' withdrawal in favor of the defendant, and from their refraining to prosecute an adverse claim which was never filed. This would clearly be insufficient to take the case out of the statute. If, in fact, plaintiffs had been in the exclusive possession of the lode in question, and defendant had never been in possession or exercised acts of ownership until the bargain was made between them, and the plaintiffs had surrendered possession in pursuance of the contract, it would have been easy to set forth such facts in unequivocal terms, and not have left them to be inferred from the ambiguous averments of this complaint.

There was no error in sustaining the demurrer, and the judgment of the court below must be

*Affirmed.*