[Civ. No. 10032.   Third Dist.   June 15, 1961.]

ELGIN FRANCIS, Appellant, v. RAFALITA COLENDICH, Respondent.

Leonard G. Husar and Herbert Chamberlin for Appellant.

Orrin K. Airola for Respondent.

SCHOTTKY, J.—Elgin Francis has appealed from a judgment in favor of Rafalita Colendich quieting title to certain real property.

Francis brought this action to quiet title to three parcels of land in Calaveras County. Rafalita Colendich denied the claim of Francis and by cross-complaint sought specific performance of an oral agreement entered into by her son, Nick (her predecessor in interest), as purchaser, and Samuel Clifton and his wife, Amelia B. Clifton, for the purchase of a parcel of land 100 feet by 275 feet and a declaration that Elgin Francis held the property in trust for her. It was stipulated that the parcel Rafalita claims is the same as that claimed by Francis.

It appears from the agreed condensed narrative of all oral proceedings that Nick purchased a lot from the Cliftons in 1937 and received a deed for it dated September 25, 1937. Thereafter, but prior to November 9, 1939, Nick allegedly entered into an oral contract for the purchase of a second parcel of land some 100 feet by 275 feet adjoining the rear of his property. A receipt was introduced in evidence which was dated November 9, 1939, and which acknowledged the receipt of $125 from Nick for land. A check also dated November 9, 1939, which was payable to Mr. and Mrs. Sam

Clifton was also introduced. This check bore the notation: "Paid in full for lot 100 x 275." Mrs. Clifton acknowledged the receipt and an endorsement on the check was in her handwriting. The parcel of land was surveyed. Both the surveyor and Mr. Clifton told Rafalita that they were surveying the additional ground her son had purchased. Shortly after the survey was completed the property was fenced. Nick and Rafalita occupied the property. Nick was killed in combat in Europe in 1944. Rafalita continually occupied and used the property. She was Nick's mother and heir.

In August 1947 Francis acquired a deed to the property from some people named Worley, who in turn had received a deed from Amelia Clifton, dated December 11, 1946, who had succeeded to her husband's interest in it.

In the fall of 1951 Francis cut the fence and entered upon the property. He was requested to leave. He did so and then brought this action.

It was stipulated that no deed for the parcel in dispute was ever executed and delivered to Nick Colendich by the Cliftons.

The court found substantially in accordance with the foregoing statement of facts and entered judgment that plaintiff and cross-defendant holds the legal title to the premises in dispute in trust for the defendant and cross-complainant and that the latter is the equitable owner of the property. The court ordered that plaintiff and cross-defendant execute and deliver to defendant and cross-complainant a deed and conveyance of the property, and in default thereof a commissioner of the court be appointed to do so; and that plaintiff and cross-defendant and all persons claiming under him be restrained and enjoined and forever debarred from claiming or asserting any right, title, claim or interest therein adverse to defendant and cross-complainant.

Appellant Francis contends that the material findings are not supported by the evidence. This contention cannot be sustained. ██ The evidence does support the finding that the son, Nick, purchased the property; that he and his mother, the respondent, entered upon the property and were in possession of it over the years; and that the property was fenced. These facts would prevent appellant from being an innocent purchaser. ██ As stated in *Follette* v. *Pacific Light & Power Corp.*, 189 Cal. 193, at page 213 [208 P. 295, 23 A.L.R. 965] : "It must, therefore, be taken to be the long and well-settled law of this state that the actual, open, notorious and visible possession and occupancy of real property imparts no-

tice to those dealing with the title thereto of the rights and interests of such possessor and that a person attempting to obtain title to such premises with such knowledge, or duty to acquire such knowledge, as such notice imparts, cannot as to such possessor be or become a bona fide purchaser thereof to the extent of being able to assert a better right or title thereto than that which his predecessors had or could have asserted.''

Appellant contends further that the judgment must be reversed because the court did not find on defenses raised by him in his answer to the cross-complaint, namely, the statute of limitations, statute of frauds and laches.

In its memorandum opinion the trial court stated: ''The oral contract having been fully performed by Nick Colendich during his lifetime does not fall within the provisions of the Statute of Frauds. I do not think the Statute of Limitations began to run against defendant until after the fence had been cut in August, 1951.''

It is evident in view of the other findings that neither respondent's counsel nor the court believed that specific findings on these issues were necessary. And while we believe it would have been better for the court to have made specific findings on these issues, we do not believe that the failure to do so was reversible error. (Const., art. VI, sec. 4½.)

The evidence would not have sustained a finding that respondent's cross-complaint was barred by the statute of limitations. The statute of limitations does not begin to run against a buyer in possession of real property under a contract of purchase as long as he remains in possession against a vendor and does not abandon the contract. *Secret Valley Land Co.* v. *Perry,* 187 Cal. 420 [202 P. 449].) The same rule applies to the question of laches.

Nor would a finding that respondent's claim was barred by the statute of frauds have been sustained by the evidence. The statute of frauds was not a bar to respondent's claim. Part performance will serve to take a contract out of the statute and it then will be enforced in equity. Mere payment of money is not enough, but taking possession in reliance on the oral agreement, if it is actual, visible, notorious and exclusive so that it furnishes evidence of the agreement between the parties as good as a writing, is sufficient to take the agreement out of the statute. (*Harrison* v. *Hanson,* 165 Cal.App.2d 370, 376 [331 P.2d 1084] ; see also *Hawke* v. *Ellwanger,* 108 Cal.App. 105 [291 P. 279].) Respondent's pos-

session and that of her son before her under the oral contract of sale was sufficient part performance to take the contract out of the statute of frauds.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.